No. 1-22-1246

Order Filed August 11, 2023

Fifth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| GEORGE OTTO, ADELADJA BOCHEMECK, and MICHAEL NIEDZINSKI, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 2016 L 1203 |
| | ) | |
| CHICAGO PUBLIC MEDIA, INC., and NEIL STEINBERG, | ) ) ) | Honorable Daniel A. Trevino, Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Lyle and Navarro concurred in the judgment.

**ORDER**

¶ 1    ***Held***:  We affirm the circuit court's dismissal of plaintiffs' defamation *per se* and false light claims pursuant to section 2-615 of the Code of Civil Procedure.

¶ 2    Plaintiffs George Otto, Adeladja Bochemeck, and Michael Niedzinski, appeal the circuit court's dismissal of their lawsuit with prejudice under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)) for failure to state a cause of action. They argue that the

circuit court erred because the complaint sufficiently pleaded claims for both defamation *per se* and false light. We affirm.

¶ 3                                         BACKGROUND

¶ 4      The factual allegations of the complaint, which we take as true for the purposes of this appeal, are straightforward. Plaintiffs alleged that in 2021, defendant Neil Steinberg wrote an article published in the *Chicago Sun-Times*. The piece contrasts Black History Month with recent Polish governmental censorship of certain historical perspectives of atrocities committed against Jews in Poland in World War II. The key language in the article at issue in this appeal reads:

> "Poland has a long history of anti-Semitism. It was anti-Semitic before World War II.... During the war, while there was certainly heroism — the unprepared Polish Army did charge German tanks on horseback — there was widespread collaboration in the form of killing off Jews, including my grandfather's entire family and his brother Zalman. The above paragraph is true, and the whole truth is far worse. Poles were killing Jews after the war, out of habit, when they tried to return to their villages."

Neil Steinberg, The Greatness Comes from Facing History, *Chicago Sun-Times* (Feb. 7, 2021) https://perma.cc/8QN6-GYPT.

¶ 5      In response to this piece, plaintiffs filed a two-count complaint which contained detailed factual allegations of brave and valiant acts taken by Poles to fight against Nazi Germany and prevent the genocide of Jews in World War II. Count I was a claim for defamation *per se*, focusing on this sentence: "[P]oles were killing Jews after the war, out of habit, when they tried to return to

-2-

their villages." The plaintiffs alleged that they lived in Poland during World War II and did not take part in any atrocities against Jews. In fact, they claimed, they witnessed Poles taking heroic actions to help Jews during that time. Accordingly, they contend, Steinberg's article defamed them in their roles as Polish nationals living in Poland during the relevant time period. The second count was a claim of false light based on the same operative facts.

¶ 6    Defendants moved to dismiss the complaint pursuant to section 2-615 of the Code. As to Count I, defendants asserted that plaintiffs could not state a valid claim of defamation *per se* as the article was not "of and concerning" plaintiffs and did not identify them individually. They also argued that the innocent construction rule barred plaintiffs' claims because the column could be reasonably construed as asserting that parties other than the plaintiffs were at fault. Finally, defendants asserted that the false light claim in Count II necessarily failed along with the defamation *per se* claim.

¶ 7    After briefing, the circuit court dismissed the complaint with prejudice pursuant to section 2-615 of the Code. The circuit court found, among other things, that the statements were protected from plaintiff's claims by the innocent construction rule. This appeal followed.

¶ 8                                    ANALYSIS

¶ 9    Because this case comes before us on a section 2-615 dismissal, we construe all well-pleaded facts in the light most favorable to the plaintiff and take those facts and all reasonable inferences which flow from those facts as true. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 320 (2008). We review dismissals pursuant to section 2-615 *de novo*. *Id.* at 305.

¶ 10    On appeal, plaintiffs contend that the circuit court erred in dismissing the complaint. Regarding Count I, defamation *per se*, plaintiffs argue the statements at issue were "of and concerning" them. As to Count II, the plaintiffs allege that the defendants cast them in a false light.

¶ 11    A group of persons can band together to file a single suit against a defamatory publication. This is sometimes characterized as a group libel suit. *Beauharnais v. Illinois*, 343 U.S. 250, 263 (1952) (affirming a decision rejecting a libel claim brought by a class of citizens). Our state supreme court has also recognized that a libel against a class or group may provoke a breach of peace or disturb society as would libel on an individual, allowing punishment of libel even when individual members of the class or group cannot be proved. *People v. Spielman*, 318 Ill. 482, 489–90 (1925). Here, we analyze this lawsuit under the rubric of the specific defamation *per se* and false light claims which plaintiffs have pleaded.

¶ 12    We first address Count I, the defamation *per se* claim. Under Illinois law, to state a defamation *per se* claim, a plaintiff must present sufficient facts establishing that: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) the publication caused damages. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). A defamatory statement is one that harms the plaintiff's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him. *Id.* The preliminary construction of an allegedly defamatory statement is a question of law. *Id.* at 492.

¶ 13    A statement is defamatory *per se* if the harm is "obvious and apparent on its face." *Id.* at 491. Our supreme court has recognized four categories of statements that are considered defamatory *per se*: "(1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability in his or her trade, profession or business." *Kolegas v.*

*Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992). A defamation *per se* claim must be pleaded "with a heightened level of precision and particularity." *Green*, 234 Ill. 2d at 495.

¶ 14    Plaintiffs argue that the following statement in the *Chicago Sun-Times* article constitutes defamation *per se*: "Poles were killing Jews after the war, out of habit, when they tried to return to their villages." Murder is, of course, a "criminal offense" under the above-listed categories of statements that can constitute defamation *per se*. Defendants counter that because the article does not mention plaintiffs by name, they cannot bring a valid claim for defamation *per* se.

¶ 15    Illinois law regarding aggregate defamation claims of this nature is well established. "[R]eferring to someone other than the plaintiff embodies a rule that this court has applied when an allegedly defamatory statement does not name the plaintiff." *Rivera v. Allstate Ins. Co.*, 2021 IL App (1st) 200735, ¶ 33, citing *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 732 (1990) (denying an appeal on the basis that plaintiff was not named and therefore cannot be defamation *per se* to him). In *Rivera*, Allstate filed a form with the Securities and Exchange Commission alleging that there were employees trading equity shares which adversely impacted investment portfolios. *Id.* ¶ 8. This court rejected the traders' claims, finding that the form did not specify any particular equity traders and that a reader could not reasonably construe that the particular trader-plaintiffs had filed the form. *Id.* ¶ 34.

¶ 16    Likewise, in *Schaffer*, the chief toxicologist of the Cook County Medical Examiner's office sued a television journalist for stating that the office—not the individual toxicologist plaintiff— "mishandled" evidence in a well-publicized mass poisoning case. This court rejected the toxicologist's claim, explaining:

> "The statement at issue, however, does not mention Schaffer by name, cannot be injurious
>
> to him on its face, and is not defamatory *per se* as to him. * * * [T]he statement 'evidence

was mishandled by the Medical Examiner's Office' cannot be said to be defamatory *per se* as to Schaffer. Not only is he not named therein, but the statement does not refer to him or mention toxicologists or the 'chief toxicologist,' nor does it allude to specific investigations conducted solely by Schaffer. At most, it refers to a group of which Schaffer is a member, the Cook County Medical Examiner's Office. Without more, the statement is not so obviously and naturally harmful to Schaffer that a showing of special damages is unnecessary." *Schaffer*, 196 Ill. App. 3d at 732 (citations omitted).

¶ 17 Here, the plaintiffs take issue with the statement's generalized notion of Polish people. In this case, just as in *Rivera* and *Schaffer*, we cannot construe Steinberg's generalizations to specifically the three named plaintiffs. The article does not mention them anywhere. Unlike the cited cases dealing with publications referring to a very small discrete group of persons, the article refers in general terms to an entire nation of millions of people. Therefore, plaintiffs did not state a valid defamation *per se* claim under Illinois law.

¶ 18 For sake of completeness of our analysis, we also specifically address plaintiffs' arguments that the innocent construction does not apply here. Again, Illinois law on this topic is consistent and well established. Even if a statement can be construed as being defamatory *per se*, it is not defamatory *per se* if it is reasonably capable of an innocent construction. *Kolegas*, 154 Ill. 2d at 11. Under the innocent construction rule, a court must consider the statement in context and give its words, and any implications arising from them, their natural and obvious meaning. *Green*, 234 Ill. 2d at 499. While a court "should not strain to see an inoffensive gloss" where the defendant "clearly intended and unmistakably conveyed a defamatory meaning," if the statement in context is reasonably capable of a nondefamatory interpretation, it should be interpreted as such. *Id.* at 500. "The rigorous standard of the modified innocent construction rule favors defendants in *per se*

actions in that a nondefamatory interpretation must be adopted if it is reasonable." (Emphasis added and in original.) *Mittleman v. Witous,* 135 Ill. 2d 220, 234 (1990), *abrogated on other grounds by Kuwik v. Starmark Star Marketing and Administration, Inc.*, 156 Ill. 2d 16, 30 (1993). "The tougher standard is warranted because of the presumption of damages in *per se* actions." *Id.* Whether a statement is reasonably susceptible to an innocent construction is a question of law. *Kolegas*, 154 Ill. 2d at 11; see also *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 413 (1996).

¶ 19    Plaintiffs allege the innocent construction rule does not defeat their claim because the quoted language in Steinberg's article encompasses a sufficiently small group of Polish emigrants in the Chicago area who grew up in Poland during World War II. On this point, plaintiffs rely on authorities such as *Bryson v. News American Publications, Inc.*, 174 Ill. 2d 77 (1996) and *Missner v. Clifford*, 393 Ill. App. 3d 751 (2009). We find these cases to be inapposite.

¶ 20    In *Bryson*, a plaintiff sued a news organization for defamation *per se* and false light because a news article had both named and identified the plaintiff as a "slut." *Bryson* at 83. There, the court found that the statements made by defendants fell into a defamation *per se* category. *Id.* at 89-90. Further, under innocent construction, the court found that the defendants had construed a negative connotation of the specified word through the context of the article. *Id.* at 94. *Bryson* is markedly different from this case because the article at issue specifically named the plaintiff by last name. *Id.* at 97. Here, we have the opposite: Steinberg's article did not name the plaintiffs. Plaintiffs essentially ask this court to strain to find an unnatural, possibly malicious meaning of the defamatory statement, something with the innocent construction rule forbids us to do. *Id.* at 94.

¶ 21    The publication at issue in *Missner* also individually named the plaintiff. *Missner* at 766-67. This court found that the innocent construction rule did not bar the claim because the press release directly identified the plaintiffs by name. *Id.* at 768.

¶ 22 Here, the article did not refer to emigrants from Poland who grew up in Poland during World War II, and it does not mention the city of Chicago in any context, other than in the name of the newspaper itself on the masthead. Accordingly, we struggle to find exactly how a reader could connect a historical article that deals with Poland, Polish internal politics, and potential atrocities after World War II, as specifically referring to three local Polish emigrants out of a pool of millions of potential actors. Therefore, the circuit court correctly dismissed Count I pursuant to section 2-615 of the Code.

¶ 23 Next, we turn to plaintiff's false light claim. A claim of false light invasion of privacy serves to protect "one's interest in being let alone from offensive publicity ." *Schaffer*, 196 Ill. App. 3d 727 at 734.

¶ 24 The three elements required to establish a cause of action for false light invasion of privacy are: (1) the plaintiff was placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice, meaning "with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kirchner v. Greene*, 294 Ill. App. 3d 672, 682 (1998) (citing *Kolegas*, 154 Ill. 2d at 17–18). In addition, if a false light invasion of privacy claim is based on statements that are not defamatory *per se*, a plaintiff must allege that he or she suffered special damages. *Schaffer*, 196 Ill. App. 3d at 736.

¶ 25 The *Kirchner* court noted that "[a]lthough the causes of action of false light and defamation overlap somewhat, they are different." *Kirchner*, 294 Ill. App. 3d at 682. Our supreme court has recognized that the existence of defamation is not a requirement for false light claims. See *Lovgren v. Citizens First National Bank*, 126 Ill. 2d 411, 421 (1989) ("[A]ll defamation cases can be

analyzed as false-light cases, but not all false-light cases are defamation cases."). This court has held, however, that where the plaintiff has failed to state a cause of action for defamation *per se*, the false light count must fail as well. *Harte v. Chicago Council of Lawyers*, 220 Ill. App. 3d 255, 263 (1991). See also *Kapotas v. Better Gov't Ass'n*, 2015 IL App (1st) 140534, ¶ 75 ("where the plaintiff fails to state a cause of action for defamation *per se*, a count alleging false-light invasion of privacy based on the allegedly inherently defamatory statements must fail as well"); *Seith v. Chicago Sun-Times, Inc.*, 371 Ill. App. 3d 124, 139 (2007) ("because the plaintiffs' unsuccessful defamation *per se* claim is the basis of his false-light claim, plaintiff's false-light invasion of privacy claim fails as well").

¶ 26    Therefore, the circuit court correctly dismissed Count II pursuant to section 2-615 of the Code.

¶ 27    We have no reason to doubt the plaintiffs' claim that they did not personally participate in atrocities committed in Poland against Jews in World War II. We also recognize that they take great offense at the assertions Steinberg made in his article. Historical conflicts have not only villains, but heroes, as well. Historians, and those who comment on history, often make generalizations about nations involved in those conflicts. These generalizations emanate from the writer's creative expression and the need for brevity. In adopting this writing style, an author does not individually impugn each citizen of a nation for brutal actions taken by their government. In fact, as illustrated by the case law cited above, a tort claims so grounded would undoubtedly be barred by the principles of freedom of the press and expression guaranteed by the First Amendment of the United States Constitution (U.S. Const. amend. I) which form the framework underpinning the defenses to defamation and false light claims in our society. Given the full context of the article

and the well-established principles of Illinois law governing group libel, the plaintiffs have no valid claim under Illinois law for either defamation *per se* or false light.

¶ 28                                    CONCLUSION

¶ 29    Because plaintiffs' complaint does not set forth valid claims for defamation *per se* or false light, we affirm the circuit court's order dismissing their complaint with prejudice.

¶ 30    Affirmed.